IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**JANET M. SCHNEIDER,**　　　　　　　　　　　　　　Civil No. 09-613-KI

　　　　　Plaintiff

　　v.　　　　　　　　　　　　　　　　　　　　　　**OPINION AND ORDER**

**MICHAEL J. ASTRUE,**
Commissioner of Social Security

　　　　　Defendant.

TIM WILBORN
P.O. Box 2768
Oregon City, OR 97045

　　Attorney for Plaintiff

DWIGHT C. HOLTON
Acting United States Attorney

ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

CAROL A. HOCH
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

       Attorneys for Defendant

KING, District Judge:

Plaintiff Janet Schneider ("Schneider") seeks judicial review of the Social Security Commissioner's final decision denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's final decision is affirmed.

## BACKGROUND

Born in 1971 (Tr. 68),[1] Schneider reports a high school education (Tr. 79) and past work as a fast food cashier and grocery store stockist. Tr. 74. Schneider alleges disability since November 1, 1994, due to bipolar disorder, obsessive compulsive disorder, personality disorder, and thyroid deficiency. Tr. 73. The Commissioner denied Schneider's application initially and upon reconsideration. Tr. 49-51, 64-67.

An Administrative Law Judge ("ALJ") held hearings on September 2, 2008, and November 24, 2008. Tr. 756-812. On January 13, 2009, the ALJ found Schneider not disabled. Tr. 21-28. The

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on July 21, 2009 (Docket # 8).

Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 5-7. Schneider presently appeals.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. 20 C.F.R. §§ 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 416.920(e), Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can perform her past relevant work,

she is not disabled. If the ALJ finds that the claimant's RFC precludes performance of her past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v); 416.920(f); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, she is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 416.920(g); 416.966.

## THE ALJ'S FINDINGS

The ALJ found Schneider's bipolar disorder and migraines "severe" at step two in the sequential proceedings. Tr. 23. The ALJ found that these impairments did not meet or equal a listed disorder, and found that Schneider has the RFC "to perform light work . . . except she is limited to unskilled work with no public contact and minimal interaction with coworkers." Tr. 24.

At step four in the sequential proceedings the ALJ found Schneider unable to perform any past relevant work. Tr. 26. The ALJ concluded that Schneider could perform work in the national economy at step five (Tr. 27), and therefore found Schneider not disabled. Tr. 28.

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*, *see also Batson*, 359 F.3d at 1193.

**ANALYSIS**

Schneider challenges the ALJ's credibility determination, his analysis of the medical evidence, and his findings at step five in the sequential proceedings.

**I.    Credibility**

The ALJ found Schneider not credible based upon her activities of daily living, non-compliance with treatment, and treatment history. Tr. 26. Schneider contends that the ALJ

erroneously evaluated her treatment for hypothyroidism and unrelated cervical pain. Pl.'s Opening Br., 17.

  A. **Standards: Credibility**

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F.3d at 1036 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284; *see* also SSR 96-7p at *3 (available at 1996 WL 374186). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Smolen*, 80 F.3d at 1284. Once a claimant establishes an impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

  B. **Analysis: Credibility**

    a. **Activities of Daily Living**

The ALJ cited Schneider's reports that she could vacuum, wash dishes, wash floors, and do laundry. Tr. 26. Schneider endorsed her ability to perform these activities at her November 24, 2008 hearing. Tr. 791-92. The ALJ's finding is thus based upon the record. The ALJ may cite a claimant's activities of daily living in finding a claimant not credible, *Smolen*, 80 F.3d at 1284, and this finding is therefore affirmed.

### b.     Non-Compliance With Treatment

The ALJ also noted that Schneider ceased taking psychotrophic medication (Tr. 25) and did not take thyroid medication as prescribed. Tr. 26. A claimant may be found not credible for failing to follow prescribed treatment, absent a compelling reason for not following that treatment. *Smolen*, 80 F.3d at 1284. Examples of such reasons include extraordinary side effects of treatment, notably loss of vision or risks associated with organ transplant. 20 C.F.R. § 416.930. Additionally, a claimant may not be penalized for failing to seek treatment when he cannot afford treatment. *Gamble v. Chater*, 68 F.3d 319, 322 (9th Cir. 1995).

Schneider now submits that treating physician Dr. Sellers stated that she was on the wrong dose of thyroid medication "at times due to problems with her insurance" and did not cease taking her medication against medical advice. Pl.'s Opening Br. 17 (citing Tr. 318). Schneider's indicated citation shows that on September 8, 2004, treating physician Dr. Sellars noted that, for two weeks, she was taking less Synthroid than he prescribed, but that she had just started a new insurance program. Tr. 318. Dr. Sellars did not state that Schneider was unable to follow prescribed treatment due to insurance difficulties.

7 - OPINION AND ORDER

The record shows that Schneider ceased taking her medication on numerous instances. On August 19, 1995, treating physician Dr. Sanders emphasized that he dispensed thirty Synthroid tablets with two refills. Tr. 186. Emergency room physicians reported that Schneider allowed her Synthroid prescription to lapse on October 29, 1995. Tr. 181-82. Schneider also discontinued her thyroid medication between her July 1997 incarceration and her October 23, 1997 endocrinology appointment. Tr. 142. On February 20, 2006, treating physician Dr. Sellars noted that Schneider "is not on medication that she takes on a regular basis." Tr. 284. Dr. Sellars found Schneider hypothyroid on March 15, 2006, and stated "it appears that she did not resume medications as instructed." Tr. 279. Schneider also testified that her physician provided her with medication samples when she did not have insurance. Tr. 781-82. The record therefore does not support Schneider's present submission that she only ceased taking her thyroid medication when she did not have insurance. The ALJ's finding is therefore affirmed.

        **c.**        **Medical Record**

Schneider asserts that the ALJ improperly discredited her testimony by citing the medical record pertaining to her cervical disc disease and thyroid nodules. Pl.'s Opening Br. 17. The ALJ may consider a claimant's medical record in conjunction with other credibility factors. *Smolen*, 80 F.3d at 1284.

Regarding Schneider's neck impairment, the ALJ found her allegations of hand and arm numbness inconsistent with her medical record. Tr. 26. The ALJ also found that the medical record showed no difficulty grasping. *Id.* The record supports the ALJ's findings. Tr. 484, 501, 551.

The medical record also shows no evidence that Schneider's thyroid condition caused work-related limitations. While Schneider asserts that her reports of excessive daytime sleepiness are "a known symptom of a poorly functioning thyroid," Pl.'s Opening Br. 17, the medical record does not show that physicians made this correlation. Instead, treating physician Dr. Sellars noted Schneider's complaint of excessive sleepiness, and stated "I think her thyroid is probably not the problem." Tr. 302. The record also shows that Schneider failed to take her thyroid medication as prescribed, as noted above. Schneider may not now assert disability regarding an impairment for which she failed to follow treatment without an acceptable reason. 20 C.F.R. § 416.930.

The ALJ's citations to Schneider's medical record in his credibility findings are therefore affirmed.

### C.    Conclusion: Credibility

In summary, Schneider fails to show that the ALJ erroneously assessed her credibility.

## II.    Medical Evidence

### A.    Standards

Generally, the ALJ must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician. *Id.*, at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Disability opinions are furthermore

reserved for the Commissioner.  20 C.F.R. § 404.927(e)(1).  The ALJ must ordinarily give greater weight to opinions rendered by specialists.  20 C.F.R. § 404.927(d)(5).

**B.     Analysis**

**a.     Examining Psychologist Dr. Patrick**

Examining psychologist Dr. Patrick evaluated Schneider for Disability Determination Services ("DDS")[2] on November 15, 2005.  Tr. 254-59.  Dr. Patrick assessed bipolar disorder by history, and a rule-out personality disorder diagnosis.  Tr. 259.  Dr. Patrick concluded:

> In terms of her ability to participate in work-related activities, Ms. Schneider is estimated to have no more than mild limitation with regard to understanding and remembering information.  Her ability to sustain concentration and attention is expected to be within normal limits as is her ability to persist with work-related tasks.  Based on her presentation and reported history, Ms. Schneider is expected to have significant difficulties in terms of maintaining normal social interactions.  There is evidence for some significant characterological traits which are likely to strongly impair Ms. Schneider's ability to function effectively in most social settings, and which are likely to persist given their chronic, longstanding status.

Tr. 259.  The ALJ noted Dr. Patrick's diagnoses and findings (Tr. 24, 25), and subsequently gave Dr. Patrick's opinion "significant weight."  Tr. 25.

Schneider now contends that the ALJ failed to credit Dr. Patrick's finding that she has social difficulties, and is specifically unable to interact with supervisors.  Pl.'s Opening Br. 16.  This assertion is not based upon the record.  Dr. Patrick made no finding regarding Schneider's interaction with workplace supervisors.  In discussing Dr. Patrick's opinion, the ALJ noted, "characterological

---

[2]DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 404.903.

traits were likely to strongly impair her ability to function in most social settings." Tr. 25. The ALJ's RFC restricted Schneider to "no public contact and minimal interaction with coworkers." Tr. 24. The ALJ's RFC encompasses Dr. Patrick's findings. Because Dr. Patrick made no finding regarding workplace supervisors, Schneider's remaining submission is not based upon the record and therefore fails. The ALJ's findings regarding Dr. Patrick's opinion are affirmed.

### b.   Specific Impairments

Schneider also contends that the ALJ omitted limitations specifically related to her stress tolerance and her headaches.

### i.   Stress Tolerance

Schneider asserts that the ALJ should have found her alleged inability to tolerate workplace stress precluded work activity. Pl.'s Opening Br. 14-15. Schneider cites her own testimony and instances in the medical record regarding her emotional lability. *Id.*

The ALJ noted Schneider's reports that she lost a job at McDonald's because she could not get along with customers, and her report that she lost a job because she could not get out of bed to attend work. Tr. 25. The ALJ also cited mental status examinations showing Schneider's mood was labile, "ranging from normal to depressed and tearful." *Id.* Finally, the ALJ noted that a physician "filled out paperwork for temporary disability based on mental health," but concluded, "However, there is no evidence of any long-term assessment of disability." *Id.*

As discussed above, the ALJ may reject limitations based upon testimony of a claimant found not credible. *Bray*, 554 F.3d at 1227. The ALJ was therefore not obliged to credit Schneider's testimony regarding her inability to work due to her low stress tolerance.

The ALJ may also reject limitations unsupported by the medical record, *Bayliss*, 427 F.3d at 1216, and may reject physician opinions predicated upon reports from a claimant found not credible. *Id.* at 1228; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The medical record supports Schneider's citations regarding her emotional lability, notably in the form of a mood impulsivity diagnosis. Tr. 156, 176, 178, 180, 188, 190, 193-96. However, the medical record does not support Schneider's assertion that she is unable to work due to stress. On November 16, 1995, family practice resident Dr. Schall wrote that Schneider was under stress caring for her children and attempting to find a job, but did not state that this circumstance precluded work activity. Tr. 180. Between June and September 1996 OHSU physicians noted Schneider's stress response to losing custody of her children due to abuse, but did not indicate that this response was work related. Tr. 156, 157, 159, 161, 408.

For these reasons, Schneider fails to show that the ALJ erred in addressing her ability to tolerate workplace stress.

### ii.    Headaches

The ALJ found Schneider's migraine headaches "severe" at step two in the sequential proceedings. Tr. 23. Schneider asserts that the ALJ should have included further headache limitations in his RFC assessment.

Schneider first claims, without pinpoint citation, that the ALJ's failure to include headache limitations in her RFC assessment is "reversible error per se." Pl.'s Opening Br. 12. Schneider instead infers that the Commissioner's administrative rulings require the ALJ to include limitations stemming from any severe impairment in his RFC assessment. However, Schneider fails to show

that the ALJ omitted headache limitations in his finding that Schneider is limited to light work without public contact and interaction with coworkers. This submission is therefore rejected.

Schneider also asserts that the medical record shows that her migraines occur "frequently," and that resulting symptoms would cause "multiple unscheduled absences from the workplace." Pl.'s Opening Br., 13. This submission is again based upon Schneider's own reports of her symptoms and concurrent workplace absences. As noted, the ALJ may reject physician reports and workplace limitations based upon a claimant's own testimony where the claimant has been found not credible. *Bray*, 554 F.3d at 1228; *Tonapetyan*, 242 F.3d at 1149. For this reason, the ALJ properly rejected Schneider's additional alleged limitations due to her headaches.

In summary, Schneider fails to show that the ALJ erroneously evaluated the medical evidence. The ALJ's findings are affirmed.

## III.     The ALJ's Step Five Findings

Schneider finally asserts that the ALJ's hypothetical questions to the vocational expert were not valid, and that the ALJ therefore made erroneous step five findings. Pl.'s Opening Br., 18-19.

After an ALJ determines that a claimant cannot perform past relevant work at step four, the ALJ must determine if the claimant can perform work in the national economy at step five. 20 C.F.R. § 416.920(a)(4)(v). Here the ALJ may draw upon the testimony of a vocational expert, and his questions to the vocational expert must include limitations that are properly supported by the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

The ALJ presently found that Schneider could perform light work, with additional limitations to unskilled work without public contact and minimal interaction with coworkers. Tr. 24. Schneider

now asserts that the ALJ should have included additional limitations stemming from her testimony regarding her headaches, "multiple physical limitations," and workplace absences. Pl.'s Opening Br. 19. The ALJ appropriately rejected Schneider's symptom testimony for the reasons discussed above. The ALJ therefore properly excluded Schneider's additional alleged limitations from his RFC analysis.

Schneider also asserts that the ALJ's hypothetical question should have included additional limitations assessed by Dr. Patrick regarding her alleged inability interact with workplace supervisors. Pl.'s Opening Br. 19. This submission is not based upon the record, for the reasons discussed above.

For all of these reasons, Schneider fails to show that the ALJ inappropriately omitted limitations from his hypothetical questions to the vocational expert. The ALJ's findings at step five are therefore affirmed.

## CONCLUSION

The Commissioner's decision that Schneider did not suffer from disability and is not entitled to benefits under Title XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence. The Commissioner's decision is AFFIRMED and the case is dismissed.

IT IS SO ORDERED.

Dated this ___14th___ day of April, 2010.

                                                        /s/ Garr M. King
                                                        Garr M. King
                                                       United States District Judge